## LEYSON *v.* DAVIS.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 517.  Submitted March 14, 1898. — Decided April 11, 1898.

In a suit commenced in a court of the State of Montana by the administrator of the donor of national bank stock, no written assignment having .been made, against the donee to compel the delivery of the certificates to the plaintiff, and against the bank to require it to make a transfer of the stock to the plaintiff, the donee set up that the gift was voluntarily made to him by his father in his lifetime, *causa mortis*, and on trial it was decided that he was the owner of such stock and of the certificates, and was entitled to have new certificates therefor issued to him by the bank; and a decree having been entered accordingly, it was sustained by the Supreme Court of the State upon appeal. *Held*, that these matters raised no Federal question; that no title, right, privilege or immunity was specially set up or claimed by the administrator under a law of the United States, and denied by the highest tribunal of the States; and that the controversy was merely as to which of the claimants had the superior equity to those shares of stock, and the national banking act was only collaterally involved.

THIS was an action commenced by the special administrator of the estate of Andrew J. Davis, deceased, and continued in the name of his successor, Leyson, administrator with the will annexed, against Andrew J. Davis, Jr., and the First National Bank of Butte, in the District Court of the State of Montana for the county of Silver Bow, to recover nine hundred and fifty shares of the capital stock of the defendant bank, alleged by the administrator to belong to the estate of the deceased, and claimed by the defendant Davis, Jr., under a *donatio causa mortis.* The prayer of the complaint was that the claim of defendant Davis, Jr., to the stock be declared void; that he be compelled to deliver up the certificates; and that the bank be required to transfer the same on its books and issue new certificates to plaintiff as administrator.

The answer of Davis, Jr., in addition to his defence, set up affirmative matter, and prayed that he be adjudged the owner of the stock; that plaintiff as administrator and the estate be decreed to have no right or interest therein; and that the bank be required to make the proper transfers upon its books to him. The bank answered that it was ready and willing to transfer the shares of stock to the party determined by the court entitled to the same.

The trial court found as facts, in substance, that in the latter part of December, 1889, Andrew J. Davis was, and had been for some months, seriously and dangerously ill, suffering from an ailment of which he died in the month of March following; that being so ill, and in view and expectation of death, but being of sound and disposing mind, he gave to defendant Andrew J. Davis, as a gift, the shares of stock and certificates thereof described in the complaint, and at the same time delivered the certificates to said Andrew J., who then and there received and accepted the same, and who has ever since said gift and delivery retained and held the shares of stock and certificates in his possession, and claimed them as his own; that the deceased had great affection for and confidence in defendant Andrew J., and at the time of the gift of the stock and certificates, and for several years prior thereto, it was and had been the intention of the deceased to give the stock and

certificates to said Andrew J.; that there was no written assignment of the stock or certificates, or power of attorney executed by deceased in connection with the gift, nor any written authority empowering Andrew J., or any other person for him, to transfer the stock and certificates on the books of the bank during the lifetime of the donor, and that there was no transfer made on the books of the bank to Andrew J.; that no other gift than the gift of the stock was made, or attempted to be made, by the deceased to Andrew J.; that the gift of the stock was an absolute gift, and was a valid gift *mortis causa;* and that defendant Andrew J. had ever since held possession and exercised control and dominion over the stock, with the knowledge of the donor to the time of his death, arising and resulting only from the fact of the gift and the donee's possession. It was, therefore, concluded that defendant Andrew J. Davis was the owner of the stock and certificates described in the complaint, and entitled to have the shares transferred to him on the books of the bank, and to have new certificates issued to him therefor; that the donor was divested of his possession, dominion and control of said shares of stock by the gift; that the plaintiff, as administrator, had not, nor had the estate of the deceased, any right, title or claim in or to the shares of stock or certificates, and that defendant Andrew J. was entitled to a decree in accordance with the prayer of his answer.

The decree was accordingly so entered. On appeal the Supreme Court of Montana reviewed the facts and the law at length, and elaborately discussed the authorities both in England and in this country; sustained the claim of defendant Davis to the stock; and affirmed the decree. 17 Montana, 220.

A writ of error from this court was thereafter allowed and motions made to dismiss or affirm.

*Mr. A. T. Britton, Mr. W. W. Dixon, Mr. A. B. Browne, Mr. B. Platt Carpenter* and *Mr. James W. Forbis* for the motions.

*Mr. Robert G. Ingersoll, Mr. Walter S. Logan, Mr. Charles M. Demond, Mr. Henry A. Root* and *Mr. E. W. Toole* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The Supreme Court of Montana held that as between donor and donee a valid gift of the stock was made by the delivery thereof, without a transfer of the shares on the books of the bank or indorsement on the back of the certificates themselves, which carried the equitable title and entitled the donee to call for the legal title as against the representative of the donor's estate. This conclusion was arrived at solely on principles of general law, and in itself involved the disposition of no Federal question.

It is true that by section 5139 of the Revised Statutes shares of the capital stock of national banks are declared to be personal property, "transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association;" and it is conceded by defendant in error that by one of the by-laws of defendant bank it was prescribed that its stock should be "assignable and transferable only on the books of this bank, subject to the restrictions and provisions of the banking laws, and transfer books shall be provided, in which all assignments and transfers of stock shall be made. No transfer of stock shall be made without the consent of the board of directors by any stockholder who shall be liable, either as principal debtor or otherwise;" and that the certificates in question contained the provision: "Transferable only by him or his attorney on the books of this bank on the surrender of this certificate."

But these matters raised no Federal question. The rights of third parties, or of creditors, or of the bank, were not in issue or determined here, but simply the equities as between the particular parties. The representative of the donor was manifestly bound by the donor's valid acts, and could assert no right superior to his. His right to make the gift was the right to dispose of his own property, and whether as between him and his donee the equitable title passed was a question of general or local law. The administrator's claim that he was entitled to receive the stock as representing the estate or for

the benefit of the next of kin rested on that law as administered by the courts of the State.

So far as the act of Congress is concerned, we understand the doctrine to be, as stated in *Johnston* v. *Laflin*, 103 U. S. 800, 804, that: "The transferability of shares in the national banks is not governed by different rules from those which are ordinarily applied to the transfer of shares in other corporate bodies."

In *Black* v. *Zacharie*, 3 How. 483, 513, it was said: "It is true that the charters of the Carrollton Bank and of the Gaslight and Banking Company provide that no transfer of the stock of these corporations shall be valid or effectual until such transfers shall be entered or registered in a book or books to be kept for that purpose by the corporation. But this is manifestly a regulation designed for the security of the bank itself, and of third persons taking transfers of the stock without notice of any prior equitable transfer. It relates to the transfer of the legal title, and not of any equitable interest in the stock subordinate to that title. In the case of the *Union Bank of Georgetown* v. *Laird*, 2 Wheat. 390, this court took notice of the distinction between the legal and equitable title in cases of bank stock, where the charter of the bank had provided for the mode of transfer. The general construction which has been put upon the charters of other banks containing similar provisions as to the transfer of their stock, is, that the provisions are designed solely for the safety and security of the bank itself, and of purchasers without notice ; and that as between vendor and vendee a transfer, not in conformity to such provisions, is good to pass the equitable title and divest the vendor of all interest in the stock. Such are the decisions in the cases of the *Bank of Utica* v. *Smalley*, 2 Cowen, 770, 777, 778 ; *Gilbert* v. *Manchester Iron Co.*, 11 Wend. 628 ; *Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. 348, 362 ; *Quiner* v. *Marblehead Insurance Co.*, 10 Mass. 476, and *Sergeant* v. *Franklin Ins. Co.*, 8 Pick. 90."

We cannot perceive that any title, right, privilege or immunity was specially set up or claimed by the administrator under a law of the United States and denied by the highest

tribunal of the State, which is the ground of jurisdiction relied on. The controversy was merely as to which of the claimants had the superior equity to these shares of stock, and the national banking act was only collaterally involved. *Conde* v. *York,* 168 U. S. 642; *Union National Bank* v. *Louisville &c. Railway,* 163 U. S. 325; *Eustis* v. *Bolles,* 150 U. S. 361.

*Writ of error dismissed.*

Mr. JUSTICE HARLAN was of opinion that this court had jurisdiction and that the judgment should be affirmed.