## Groff v. Batdorf

*W. Roger Fetter*, for plaintiff.

*Clair Groover*, for defendant.

KALP, P. J., April 7, 1967.—In this action Arthur J. Groff, executor of the Estate of Horace W. Groff, deceased, hereafter called plaintiff, filed a complaint in assumpsit on January 24, 1966, against Estella E. Batdorf, hereinafter referred to as defendant, demanding judgment against the defendant in the sum of $8,000 representing the proceeds from eight $1,000 United States Savings Bonds, Series H, which were registered in the sole name of Horace W. Groff; and in the amount of $672.18 representing the balance in a joint checking account payable to either or survivor at the Lewisburg National Bank. This checking account was opened on May 7, 1963, in the names of Horace W. Groff and Estella E. Batdorf.

In addition to the complaint, the pleadings consist of defendant's answer setting forth new matter, and plaintiff's answer to defendant's new matter.

It was stipulated that the case would be tried before the court without a jury and the trial was held on September 20, 1966.

From the pleadings and the testimony, the court finds the following facts:

During February and March of 1964, Horace W. Groff, who was in poor health, was living at the home of defendant, Estella E. Batdorf, who was furnishing him with room, board and care. Some time between the middle of February and the beginning of March 1964, Horace W. Groff signed the requests for redemption of the bonds, and delivered them to defendant, stating he wished her to have the bonds as a gift.

On March 11, 1964, defendant delivered these bonds to the Lewisburg National Bank for redemption as of May 1, 1964, in accordance with the redemption provisions of the bonds. In the meantime Horace W. Groff had died April 25, 1964, testate, and his brother, Arthur J. Groff, duly qualified as executor of the estate on July 24, 1964.

On May 1, 1964, a check was issued by the Treasurer of the United States in the amount of $8,000, payable to Horace W. Groff and forwarded to the Lewisburg National Bank.

On May 4, 1964, defendant directed the Lewisburg National Bank to deposit the proceeds of the check in the joint account held in the names of Horace W. Groff (then deceased) or Estella E. Batdorf. The treasurer's check was endorsed: "Deposited to the Account of the Payee". On May 4, 1964, the same date, defendant withdrew $8,000 in cash from this account. The officer of the bank who handled the transaction testified that he did not know that Horace W. Groff had died.

At the argument, plaintiff abandoned his claim to the balance of $672.18 in the joint account, limiting the issue to the redemption proceeds of the bonds.

Plaintiff contends that under Treasury regulations and the decision of the United States Supreme Court in the case of Free v. Bland, 369 U. S. 663, 82 S. Ct. 1089 (1962), neither the bonds nor the proceeds there-

of could be the subject of a valid inter vivos gift and that, therefore, the proceeds should be turned over to him as executor of the estate of Horace W. Groff, deceased.

Defendant contends that under Pennsylvania law there was a valid inter vivos gift to her of the proceeds of the bonds, and there is nothing in Federal law or regulations to prohibit such a gift.

Courts have differed on this subject in their opinions. The various cases in point may be found in 40 A.L.R. 2d 778, annotating Connell v. Bauer, 240 Minn. 280, 61 N.W. 2d 177 (1953); 4 A.L.R. 2d, Later Case Service 678 (1964).

The testimony in the case before the court clearly establishes all of the necessary elements of an inter vivos gift of a nonnegotiable security under Pennsylvania law. Furthermore, the Pennsylvania cases have held that the inter vivos gift of a nonnegotiable United States bond or the proceeds thereof is valid, notwithstanding the Federal regulations applicable to these bonds: Diskin Estate 105 Pa. Superior Ct. 519 (1932); Janusiki's Estate, 2 Fid. Rep. 505 (1952); Neglia Estate, 403 Pa. 464, 170 A. 2d 357 (1961); Silverman v. McGinnes, 259 F. 2d 731 (1958) CA 3.

All of the Pennsylvania cases were decided prior to the decision of the United States Supreme Court in Free v. Bland supra. In that case the United States Supreme Court reversed the Supreme Court of Texas and ruled that a State law, which prohibited coowners from taking advantage of the survivorship regulations governing United States bonds is invalid because such regulations are Federal law which is supreme under the United States Constitution.

It may well be, as argued by plaintiff and as suggested by Judge DiNubile in 36 Temple Law Quarterly, page 182, that Free v. Bland overruled Neglia and other Pennsylvania cases which held that jointly owned

United States bonds, or bonds payable on death to a beneficiary, may be the subject of an inter vivos gift. The treasury regulations specifically prohibit such gifts and these regulations overrule State law because of the Supremacy Clause of the United States Constitution, art. VI, Cl.2. See: Joint Ownership in Series E, United States Government Bonds, 36 Temple Law Quarterly 180 (1963); cf. Yiatchos v. Yiatchos, 276 U.S. 306, 307; 84 S. Ct. 742, 744 (1964).

Be that as it may, the bonds which Horace W. Groff delivered to defendant were registered in his name alone, and treasury regulations do not prohibit the inter vivos gift of the proceeds of bonds so registered.

Plaintiff contends that the proceeds of the bonds can not be the subject of a valid inter vivos gift because of provisions of Treasury Regulations 315.20 and 315.15, Department Circular 530, Ninth Revision dated December 23, 1964, 31 CFR 315. These sections provide as follows:

"No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary, and all other provisions of this subpart are subject to this restriction. Otherwise, a claim against an owner or coowner of a savings bond and conflicting claims as to ownership of, or interest in, such bonds as between coowners or between the registered owner and beneficiary will be recognized, when established by valid judicial proceedings, upon presentation and surrender of the bond, but only as specifically provided in this subpart.

"Neither the Treasury Department nor any agency for the issue, reissue, or redemption of savings bonds will accept notices of adverse claims or of pending ju-

dicial proceedings or undertake to protect the interests of litigants who do not have possession of a bond.

"Savings bonds are not transferable and are payable only to the owners named thereon, except as specifically provided in these regulations, and then only in the manner and to the extent so provided. A savings bond may not be hypothecated, pledged as collateral, or used as security for the performance of an obligation, except as provided in Sec. 315.16".

The court does not consider that these sections provide a final answer to the question. On the contrary, the following sections must also be considered:

"Section 315.5 . . . The regulation used on issue or reissue must express the actual ownership of and interest in the bond and, except as otherwise specifically provided in Subpart E and Section 315.48 of Subpart J of these regulations, will be considered as conclusive of such ownership and interest . . ."

"Section 315.22 (b) . . . *A bond belonging solely to one person* will be paid or reissued on the request of the person found by a court to be entitled thereto by reason of a gift causa mortis by the sole owner". (Italics supplied.)

"Subpart L—NATURAL PERSON AS SOLE OWNER

"Section 315.55 Payment. *A savings bond registered in the name of a natural person in his own right, without a coowner or beneficiary,* will be paid to him during his lifetime under Subpart H. Upon the death of the owner such bond will be considered as belonging to his estate and will be paid under Subpart O, except as otherwise provided in these regulations". (Italics supplied.)

"Subpart O—DECEASED OWNERS

"Section 315.70 General. Upon the death of the owner of a savings bond *who is not survived by a coowner or designated beneficiary* and who had not during his lifetime presented and surrendered the bond for

payment or an authorized reissue, the bond will be considered as belonging to his estate and will be paid or reissued accordingly as hereinafter provided, except that reissue under this subpart will not be permitted if otherwise in conflict with these regulations". (Italics supplied.)

"Section 315.72:

"Estates administered (a) In course of administration. If the estate of a decedent is being administered in court, the bond will be paid to the duly qualified representative of the estate or will be reissued in the names of the persons entitled to share in the estate, upon the request of the representative . . .

"(b) After settlement through court proceedings. If the estate of the decedent has been settled in court, the bond will be paid to, or reissued in the name of, the person entitled thereto as determined by the court . . ."

The Treasury Department has consistently maintained that one of the primary purposes of these regulations is to promote the successful sale of Savings Bonds by protecting the rights of coowners and beneficiaries, and thus providing an attractive way to avoid probate: Free v. Bland supra. This policy was stated by Mr. Justice White in Yiatchos v. Yiatchos supra as follows, p. 307:

"The success of the management of the national debt was deemed to depend upon the successful sale of the savings bonds, one of the inducements to purchasers being survivorship provisions which afforded 'a convenient method of avoiding complicated probate proceedings' ".

No such considerations are present where the bond is registered in a natural person as sole owner.

As stated by the late Judge Goodrich in the case of Silverman v. McGinnes, supra, p. 734:

"We think that the preferable view is the conclusion that as between the decedent's executor and the persons to whom the decedent made a gift, complete except for going through the process of having the bonds reissued, the right of the donees is clear. The transaction is equivalent to an express trust declared by the decedent even though trust terms were not used".

See also Klarfeld Estate, 38 Misc. 2d 688, App. Div. of the Supreme Court N. Y. (1963), and cases cited therein. The Klarfeld case is the only one which has come to the court's attention which is directly in point, and which has been decided since the decision in Free v. Bland.

For the reasons stated, the court is of the opinion that a valid inter vivos gift was made by decedent, Horace W. Groff to Estella E. Batdorf, defendant, and therefore the court finds in favor of defendant, the costs to be paid by plaintiff.